UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:24-CV-00742-GNS

WL ELIZABETH AL, LLC et al.                                           PETITIONERS

v.

JORDAN ALEXANDER                                                       RESPONDENT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Respondent's Motion to Dismiss (DN 12), Petitioners' Motion for Leave to File an Amended Petition (DN 15), and Respondent's Motion to Stay (DN 24). The motions are ripe for adjudication.

### I. BACKGROUND

In 2023, Lea Ann Caplinger ("Caplinger") was admitted to Bluegrass Assisted Living of Elizabethtown ("the Facility"). (Pet. ¶ 13, DN 1). The Facility is owned and operated by WL Elizabeth AL, LLC d/b/a Bluegrass Assisted Living of Elizabethtown ("BAL").[1] (Pet. ¶ 13). During the admissions process, Kelsey Alexander, Caplinger's attorney-in-fact, purportedly signed an arbitration agreement requiring any dispute between the Facility and Caplinger, including "all persons whose claim is or may be derived through or on behalf of her[,]" be resolved through arbitration. (Pet. ¶¶ 14-17).

One day during Caplinger's stay at the Facility, staff discovered Caplinger engulfed in flames in the Facility's courtyard. (State Ct. Compl. ¶ 20, DN 1-1). Caplinger sustained burns to 55% of her body and ultimately died from her injuries. (State Ct. Compl. ¶¶ 19, 22-23). Following

---

[1] BAL is owned by Petitioner Walklight Senior Living LLC d/b/a Bluegrass Assisted Living ("Walklight"), a holding company. (Pet. ¶ 3). Petitioners William Marcel Trimble III and James Justice are members of BAL and Walklight. (Pet. ¶¶ 1-5).

1

Caplinger's death, Respondent Jordan Alexander ("Alexander") was appointed as Administrator of Caplinger's estate by the Hardin District Court (Kentucky).  (Pet. ¶ 6).

Alexander filed a negligence and wrongful death action in Hardin Circuit Court (Kentucky) against Petitioners BAL, Williams James Group, LLC, Walklight, William Tremble III, and James Justice (collectively "Petitioners"), as well as Danielle Caswell ("Caswell"), the Facility's director. (State Ct. Compl. ¶¶ 4-9, 27-52).  Petitioners subsequently filed this action seeking an order compelling arbitration and related relief against Alexander as Administrator of Caplinger's Estate. (Pet. ¶¶ 21-32).  Alexander has moved to dismiss the Petition.  (Resp't's Mot. Dismiss, DN 12). Petitioners have moved for leave to file an Amended Petition and to compel arbitration.  (Pet'rs' Mot. Leave Amend, DN 15; Pet'rs' Mot. Compel Arbitration, DN 22).  Finally, Alexander has moved to stay briefing on the motion to compel arbitration pending resolution of his motion to dismiss.  (Resp't's Mot. Stay, DN 24).

## II. DISCUSSION

### A. Petitioners' Motion for Leave to File Amended Petition (DN 15)

Petitioners seek leave to file an amended petition.  (Pet'rs' Mot. Leave Amend 1).  Fed. R. Civ. P. 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Although Rule 15(a)(2) states that "[t]he court should freely give leave when justice so requires," leave to amend may be denied because of undue delay, bad faith by the moving party, undue prejudice to the non-moving party, or futility of the proposed new claim. Fed. R. Civ. P. 15(a)(2); *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999).  An amendment is futile if it could not withstand a Fed. R. Civ. P. 12(b)(6) motion to dismiss.  *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).  To survive dismissal, a complaint or petition "must contain sufficient factual matter, accepted as true, to state

2

a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Specifically, Petitioners wish to file an amended petition to seek reformation of the arbitration agreement that Kelsey Alexander signed when Caplinger was admitted to the Facility. (Pet'rs' Mot. Leave Amend 2). Petitioners assert that when Kelsey Alexander signed the arbitration agreement, it listed the other party as "Bluegrass Assisted Living LLC I,"[2] the Facility's former owner/operator, even though the Facility had been sold and was owned by BAL and operated as "Bluegrass Assisted Living of Elizabethtown." (Pet'rs' Mot. Leave Amend 2-3). Petitioners allege that this error represents a mutual mistake and therefore the arbitration agreement should be reformed to reflect the parties' intent. (Pet'rs' Mot. Leave Amend 4). Alexander, however, asserts that Petitioners' proposed Amended Petition alleges "at best" a unilateral mistake that cannot serve as grounds for reformation. (Resp't's Combined Reply Mot. Dismiss & Resp. Pet'rs' Mot. Leave Amend 3-4, DN 21).

State law governs the enforceability of arbitration clauses, so the Court will apply Kentucky law on the issue. *Stutler v. T.K. Constructors*, 448 F.3d 343, 345 (6th Cir. 2006). "Reformation is authorized 'when, because of fraud or mutual mistake, the writing does not reflect the intentions and understandings of the party seeking relief.'" *Mafcote Indus., Inc. v. Averitt Exp., Inc.*, No. 3:10-CV-00036-CRS, 2012 WL 5497936, at *6 (W.D. Ky. Nov. 13, 2012) (quoting *Cartwright v. Mfrs. & Traders Tr. Co.*, No. 2006–CA–002307–MR, 2008 WL 5264277, at *3 (Ky. App. Sep. 23, 2009)) (citing *Mayo Arcade Corp. v. Bonded Floors Co.*, 41 S.W.2d 1104, 1108 (Ky. 1931)); *see also Bariteau v. PNC Fin. Servs. Grp., Inc.*, No. 3:06-CV-132-S, 2006 WL

---

[2] Petitioners allege that "Bluegrass Assisted Living LLC I" was a typographical error and the facility's prior owner/operator was actually Bluegrass Assisted Living Properties I, LLC. (Am. Pet. ¶ 23, 25, DN 15-1).

3

8451094, at *4 (W.D. Ky. Oct. 31, 2006) ("It is within the court's equitable powers to reform a contract 'on the ground of fraud or mutual mistake, or [if] the contract is illegal.'" (alteration in original) (quoting *Childers & Venters, Inc. v. Sowards*, 460 S.W.2d 343, 345 (Ky. 1970))). "The goal of reformation is to respond to genuine instances of fraud or mistake without undermining the expectation that the plain meaning of contract terms will be enforced." *Mafcote Indus.*, 2012 WL 5497936, at *6 (citing *Cartwright*, 2008 WL 5264277, at *3).

Under both the Kentucky and Federal Rules of Civil Procedure, "the circumstances constituting . . . mistake" must be stated with particularity. Fed. R. Civ. P. 9(b); Ky. R. Civ. P. 9.02; *see Torres v. Am. Emps. Ins. Co.*, 151 F. App'x 402, 412 (6th Cir. 2005). In Petitioners' proposed Amended Petition,[3] they claim:

> 20. The Agreement identifies as a party thereto "Bluegrass Assisted Living LLC I." This reference was a typographical error, as the form that was used for the Agreement was meant to identify the name "Bluegrass Assisted Living Properties I, LLC."
> 21. Bluegrass Assisted Living Properties I, LLC was the name of the facility under prior ownership before Ms. Caplinger became a resident.
> 22. At some point between February 9, 2021 when Bluegrass Assisted Living Properties I, LLC filed its last annual report with the Kentucky Secretary of State and May 27, 2021 when WL Elizabethtown AL, LLC was incorporated in Kentucky, WL Elizabethtown AL, LLC purchased the facility and operated it under the assumed name of Bluegrass Assisted Living of Elizabethtown.
> 23. On June 30, 2022, Bluegrass Assisted Living Properties I, LLC was deemed expired by the Secretary of State.
> 24. The Agreement that Ms. Alexander signed as POA for Ms. Caplinger and Danielle Caswell signed as Executive Director for BAL was a form that was part of the admissions paperwork when residents were admitted to the facility at the time Bluegrass Assisted Living Properties I, LLC was the owner.

---

[3] Petitioners attached a "Revised Amended Petition for Contract Reformation, to Compel Arbitration and for Related Relief" to their reply, purportedly to cure any defect in asserting the claim for reformation. (Revised Am. Pet., DN 23-1). This is improper and is disregarded. *See Malin v. JPMorgan*, 860 F. Supp. 2d 574, 577 (E.D. Tenn. 2012) ("It is well-settled that a movant cannot raise new issues for the first time in a reply brief because consideration of such issues 'deprives the non-moving party of its opportunity to address the new arguments.'" (citation omitted)).

>       25.    Ms. Alexander and BAL intended that Bluegrass Assisted Living of
> Elizabethtown be identified in the Agreement, not the prior facility owner that no
> longer had any interest in the facility.  Due to a mutual mistake, the prior owner,
> misspelled as Bluegrass Assisted Living LLC I, was identified instead.

(Am. Pet. ¶¶ 20-25).[4]  The prayer for relief also contains the additional request for "[r]eformation of the Arbitration Agreement to reflect that a party thereto is Bluegrass Assisted Living of Elizabethtown in place of Bluegrass Assisted Living LLC I . . . ."[5]  (Am. Pet. 9).

Alexander, citing *Charleston Labs, Inc. v. Ameling*, No. 16-200-DLB-CJS, 2018 U.S. Dist. LEXIS 46890 (E.D. Ky. Mar. 22, 2018), argues that the proposed Amended Petition does not plead mistake sufficiently, given the heightened standard.  (Resp't's Combined Reply Mot. Dismiss & Resp. Pet'rs' Mot. Leave Amend 3-5).  A comparison of *Charleston Labs* to the current matter, however, reveals that the proposed Amended Petition contains a sufficiently detailed pleading of mistake.  In *Charleston Labs*, our sister court noted that a party's "[c]rossclaim provide[d] no details regarding the particular mistake of fact, whether unilateral or mutual, allegedly made by the parties when entering into [a] [s]ettlement [a]greement."  *Charleston Labs*, 2018 U.S. Dist. LEXIS 46890, at *31.  Because of the absence of detail, the court was "left guessing" as to the party's theory of mistake.  *Id.*  In the present instance, the proposed Amended Petition makes clear that the claimed mistake was the inadvertent use of the Facility's former owner/operator's name

---

[4] When Petitioners refer to "WL Elizabethtown AL, LLC" in paragraph 22 of their proposed Amended Petition, it appears they are in fact referring to "WL Elizabeth AL, LLC," the entity that owns and operates the Facility.  (*Compare* Am. Pet. ¶ 22, *with* Am. Pet. ¶¶ 1-3, *and* Pet. ¶¶ 1-3).

[5] Alexander argues that the Proposed Amended Petition does not state a claim for reformation because it "does not include any claim or cause of action for contract reformation."  (Resp't's Combined Reply Mot. Dismiss & Resp. Pet'rs' Mot. Leave Amend 4).  Alexander acknowledges, however, that the prayer for relief does ask for reformation of the arbitration agreement.  (Resp't's Combined Reply Mot. Dismiss & Resp. Pet'rs' Mot. Leave Amend 4).  Petitioners need not assert reformation as a specific count or claim.  *See, e.g.*, *Nichols v. Zurich Am. Ins. Co.*, 423 S.W.3d 698, 702 (Ky. 2014) (defendant asserted mutual mistake as a defense).

instead of the current owner/operator's name. (Am. Pet. ¶ 25). Unlike the court in *Charleston Labs*, Petitioners' theory of mistake is sufficiently described in the Amended Petition.

Having determined that Petitioners have alleged a clear theory of mutual mistake, the Court will consider whether these allegations are sufficient to survive a motion brought under Fed. R. Civ. P. 12(b)(6). "In order to reform a contract, a party must establish that the contract was executed under mutual mistake of fact or law regarding a basic assumption under the contract or a unilateral mistake of fact or law induced by the other party's fraudulent misrepresentation." *Smith v. BAC Home Loans Servicing, LP*, 552 F. App'x 473, 476 (6th Cir. 2014). As the Kentucky Supreme Court has explained:

> A mutual mistake in a written agreement that will justify reformation of the agreement is one common to both or all parties wherein each labors under the same misconception respecting a material fact, the terms of the agreement, or the provision of a written agreement designed to embody such an agreement.
> . . .
> It is deemed a mistake where both parties sign an instrument mistakenly believing that it reflects their antecedent bargain, and the mistake is mutual if the contract is written in terms that violate the understanding of both parties—that is, if it appears that both have done what neither intended . . . . *The mistake cannot be mutual if the minds of the parties did not meet in a common intent*.

*Nichols*, 423 S.W.3d at 703 (quoting 66 Am. Jur. 2d *Reformation of Instruments* § 22 (2013)). Accordingly, Petitioners' proposed Amended Petition must contain allegations that, taken as true, establish that *both* Petitioners and Alexander had a "meeting of the minds, 'a common intent,'" to enter into an arbitration agreement that bound Caplinger and BAL, but, because of their mistake, the resulting arbitration agreement included "what neither intended"—i.e., an agreement to arbitrate with the Facility's former owner. *Id.*

In this instance, the allegations in the proposed Amended Petition successfully state a claim for reformation on the ground of mutual mistake. Petitioners allege that the agreement was executed as part of the admissions process by Kelsey Alexander and Caswell. (Am. Pet. ¶¶ 14-

6

26). While Petitioners acknowledge that the arbitration agreement contained the name of the corporate entity that had previously owned the Facility, they allege that "[Kelsey] Alexander and BAL intended that Bluegrass Assisted Living of Elizabethtown be identified in the Agreement, not the prior facility owner that no longer had any interest in the facility. Due to a mutual mistake, the prior owner, misspelled as Bluegrass Assisted Living LLC I, was identified instead." (Am. Pet. ¶ 25). These allegations, accepted as true, show that Caplinger's attorney-in-fact and Caswell shared an intent for Caplinger and BAL to be bound by the arbitration agreement and that neither intended for Caplinger to be bound to arbitrate with the previous owner/operator.

In sum, the allegations "indicate that there was essentially a scrivener's error in identifying the proper parties" to the arbitration agreement. *Nisbet, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, No. 1:13-CV-875, 2014 WL 12883256, at *4 (S.D. Ohio May 20, 2014). "Through laziness, thrift, or lack of foresight," BAL continued to use the former owner/operator's forms after buying the Facility, instead of creating its own forms. *Id.* This does not change the basic allegation in the proposed Amended Petition that the arbitration agreement was between BAL and Caplinger. *Id.*

Alexander, however, argues that amendment is nevertheless futile because Petitioners were negligent in their use of the incorrect arbitration agreement and Petitioners were not parties to the arbitration agreement and cannot therefore request reformation. (Resp't's Combined Reply Mot. Dismiss & Resp. Pet'rs' Mot. Leave Amend 5-6).

      1.    *Negligence*

Alexander contends that Petitioners cannot assert a claim for contract reformation because, under Kentucky law, reformation is not available to a negligent party. (Resp't's Combined Reply Mot. Dismiss & Resp. Pet'rs' Mot. Leave Amend 5-6). Under Kentucky law, negligence can bar reformation if a party is alleging unilateral mistake and fraud. *See Mayo Arcade Corp. v. Bonded*

7

*Floors Co.*, 41 S.W.2d 1104, 1108-09 (Ky. 1931) (holding that negligence barred reformation in a case where party alleged unilateral mistake and fraud). Where a party is alleging mutual mistake, however, negligence "does not preclude him from seeking rescission or reformation." *Bobbitt v. Collins*, Nos. 2007-CA-001422-MR/2008-CA-002109-MR, 2010 Ky. App. LEXIS 10, at *14 (Ky. App. Jan. 22, 2010) (citing *Pressley v. Morton*, 325 S.W.2d 81 (Ky. 1959); *Daniel Boone Coal Co. v. Crawford*, 262 S. W. 1097 (Ky. 1924)).

Courts applying Kentucky law have reformed contracts for mutual mistake where a party's agent made an error in the contract, but both the agent and the other party shared a mistaken understanding of the contract's contents. *See Owners Ins. Co. v. Lyons Lumber Co.*, No. 3:05-11-MH, 2006 WL 905935, at *6 (E.D. Ky. Apr. 7, 2006) (collecting cases). In *Owners Insurance Co.*, the agent and the insured both believed that the insurance policy included coverage for non-owned automobile liability, but this coverage was omitted from the policy. *Id.* at *6. The court reformed the policy to include the omitted coverage because it was "uncontested" that the agent and insured "thought" the contract with the carrier would include the omitted provision. *Id.* at *5. The court granted relief, even though the carrier argued that the insured should instead seek relief through a negligence action against the agent. *See id.* at *5-7. The Petitioners' proposed Amended Petition similarly alleges that both Caswell and Kelsey Alexander thought that the arbitration agreement was between Caplinger and BAL. While Petitioners may have been negligent in using an outdated, incorrect form, this negligence does not render amendment of their petition futile. Accordingly, BAL's alleged negligence in the erroneous drafting of the arbitration agreement will not bar the filing of the proposed Amended Petition.

8

### 2. *Reformation to Change Parties*

Alexander also argues that Petitioners' proposed Amended Petition cannot assert a claim for contract reformation because a contract cannot be reformed to change the parties to the contract. (Resp't's Combined Reply Mot. Dismiss & Resp. Pet'rs' Mot. Leave Amend 6). Indeed, the Sixth Circuit noted in *Bariteau* that "it is far from clear" that a non-party "can bring a reformation action." *Bariteau*, 285 F. App'x at 225. The holding in *Bariteau*, however, is not controlling here. The plaintiff in *Bariteau* "was neither a party to nor a third-party beneficiary of the contract" at issue, but Petitioners allege in their proposed Amended Petition that BAL *was* a party to the agreement and was merely misidentified in the writing. *Id.*; (Am. Pet. ¶ 25).

While no Kentucky decision has been found on substantially similar facts, courts in other jurisdictions have allowed reformation in comparable circumstances. *See Nisbet, Inc.*, 2014 WL 12883256, at *4 (collecting cases); *Lowery v. AmGuard Ins. Co.*, 90 F.4th 1098, 1105-06 (11th Cir. 2024) (affirming reformation of insurance policy where the "policy insured a fictional entity with no insurable interest instead of the owner of the business that the policy was meant to insure, and the insurer reaped premiums even as the owner was denied coverage"); *Har-Mar Collisions, Inc. v. Scottsdale Ins. Co.*, 212 So. 3d 892, 901 (Ala. 2016) (affirming reformation of insurance contract to include correct corporate name where there was evidence that parties intended for policy to provide insurance for incorrectly identified entity); *Occidental Fire & Cas. of N.C. v. Goodman*, 793 S.E.2d 606, 609-10 (Ga. Ct. App. 2016) (affirming reformation of insurance contract to include correct corporate name where there was no evidence as to why either party "would have intended for the policy to provide such coverage to the prior owner who no longer had any interest in the business, rather than the actual current owner"). As discussed, Petitioners' proposed Amended Petition contains facts that, accepted as true, would indicate that Kelsey

Alexander and Caswell believed that they were agreeing to arbitrate any claim Caplinger may have against BAL. Allowing reformation would not change the parties to the contract, but reflect the actual parties to the agreement.

Alexander cites to *Dantzler v. A. Murgas LLC*, No. 3:23-CV-00310, 2024 WL 2140222 (M.D. Tenn. May 13, 2024), a case where the court refused to reform an arbitration agreement with an incorrect party designation. (Resp't's Combined Reply Mot. Dismiss & Resp. Pet'rs' Mot. Leave Amend 8-10). *Dantzler*, however, was decided under a standard "mirror[ing] that required to withstand summary judgment[,]" not the more lenient standard applied to a motion to file an amended pleading. *Dantzler*, 2024 WL 2140222, at *2 (quoting *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002)). Additionally, the *Dantzler* court never addressed the argument that reformation to substitute one corporate name for another would constitute a change in the parties to the contract. *Id.* at *3. Rather, the court found that reformation was not appropriate under the specific facts of the case. *Id.* ("On this record, Defendants have failed to establish by clear and convincing evidence that the Arbitration Agreement should be reformed to change the name of the party to the agreement."). Further, significance was given to the fact that nothing in the agreement referenced the correct corporate entity, no corporate representative signed the agreement and, when signing the agreement, plaintiff met with an agent of an onboarding firm "twice removed" from the defendant. *Id.*

In this instance, the allegations in the proposed Amended Petition specify that Kelsey Alexander intended to assent to arbitration of Caplinger's claims against BAL when Caplinger was admitted to the Facility. Accepting the allegations as true, it is certainly plausible that Kelsey Alexander and Caswell understood the arbitration agreement to be between Caplinger and BAL,

10

including its required arbitration of Caplinger's claims. Accordingly, amendment of Petitioners' Petition will not be futile, and their motion will be granted.

### B. Motion to Dismiss

Alexander moved to dismiss the Petition initially filed in this action. (Resp't's Mot. Dismiss). Because the Amended Petition subsumes the allegations in the Petition, this motion is denied as moot. *See City of Fort Lauderdale Gen. Emp.'s Ret. Sys. v. Holley Inc.*, No. 1:23-CV-00148-GNS, 2025 WL 877547, at *3 (W.D. Ky. Mar. 20, 2025).

### C. Motion to Stay

Finally, Alexander requests a stay of his response period relating Petitioners' Motion to Compel Arbitration and Stay State Court Action pending resolution of the Fed. R. Civ. P. 12(b)(6) motion. Because Petitioners have been granted leave to amend and his motion to dismiss has been denied as moot, the motion to stay is also moot.

### III. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Petitioners' Motion to Amend Petition to Compel Arbitration (DN 15) is **GRANTED**, and Petitioners' Amended Petition (DN 15-1) is hereby filed as of record.

2. Respondent's Motion to Dismiss (DN 12) is **DENIED AS MOOT**.

3. Respondent's Motion to Stay (DN 24) is **DENIED AS MOOT**. By **March 23, 2026**, Respondent shall file a response to Petitioners' Motion to Compel Arbitration and Stay State Court Action (DN 22). Petitioners may file a reply in accordance with LR 7.1(c).

Greg N. Stivers, Judge
United States District Court
March 2, 2026

cc: counsel of record